JACKSON LOMAN STANFORD & DOWNEY

Travis G. Jackson                                                                                           travis@jacksonlomanlaw.com

*Via Electronic Mail*
August 30, 2019

James P. Lyle
Law Offices of James P. Lyle, P.C.
1116 2nd NW
Albuquerque, NM 87102
penname@prodigy.net

Matter:     *San Juan Regional Medical Center vs. 21st Century Centennial Insurance Company, et al.*, 19-cv-00734-KK-JFR
RE:         Rule 11 Safe Harbor Letter

Mr. Lyle,

    I am writing in accordance with the safe harbor requirements of Fed. R. Civ. P. 11(c)(2) to request that you voluntarily withdraw the Counterclaim and Third Party Claim filed on August 12, 2019, in the above-referenced lawsuit. [ECF No. 3]

    Plaintiff San Juan Regional Medical Center ("SJRMC") seeks to collect a debt for payment of medical services provided to your client, Judy Lynn Parker. Ms. Parker was injured in a car accident and received treatment for her injuries at SJRMC. On February 12, 2018, SJRMC recorded a Notice of Hospital Lien in San Juan County for $15,171.62, which notice was also mailed to you. You then settled Ms. Parker's claims against the other driver in exchange for payment of $50,000 by that driver's insurance company. You and The Midland Group attempted to negotiate a reduction of the amount owed by your client to SJRMC, but the parties could not agree, thus this lawsuit.

    Despite your receipt and deposit of your client's settlement funds, you have never made any payment whatsoever to pay your client's debt. Nor have you interpled any portion of the settlement funds or otherwise sought resolution from the Court. You have refused to provide information about the disbursement of the settlement proceeds, except to say that it is "too late" for SJRMC to recover any money: "that ship has sailed."

    Your failure to adequately manage your client's funds to ensure release of SJRMC's hospital lien is likely malpractice and potentially fraud. NMRA Rule 15-115 (Safekeeping Property). Any misrepresentation by you to the settling insurance carrier claiming that SJRMC's hospital lien had been or would be released may also be fraudulent, and certainly violates the New Mexico Rules of Professional Conduct. NMRA Rule 16-401(A) ("In the course of representing a client a lawyer shall not knowingly . . . make a false statement of material fact or law to a third person . . . ."). Your filing of a counterclaim alleging a violation of the Racketeer

Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68 (2012), is a blatant violation of Rule 11 and myriad rules of professional ethics, thus my letter.

Your Counterclaim was clearly filed in an attempt to "retaliate" against both my law firm and our client for filing the collection action. The clear purpose of the Counterclaim is to try to distract the Court from your apparent mishandling of your client's settlement funds by making baseless claims of a criminal enterprise. Asserting a claim under RICO requires that the alleged underlying conduct be indictable under federal or state criminal law. 18 U.S.C. §1961(1). You have no basis in law or fact to allege "extortion" of your law firm (or anyone else). You simply allege that SJRMC failed to apply a damages doctrine (equitable subrogation) when trying to resolve a dispute over the appropriate reduction to your client's medical bill. Even if true, a disagreement over whether and how a legal doctrine should be applied to reduce a debt cannot form the basis for RICO action.

Moreover, you have no basis in law or fact to allege that my law firm is or could be liable for its representation of SJRMC in the collection dispute. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 1998-NMSC-014, ¶15. New Mexico law is clear that attorneys exclusively owe duties to their own clients, and cannot be held liable for alleged breaches of duties owed to opposing parties. Your claims directly contradict established New Mexico law.

Your attempt to twist this dispute over a relatively small hospital bill into a criminal conspiracy is baseless. Because you have pled unsubstantiated and frivolous claims for an improper purpose and to needlessly increase the cost of litigation, we intend to file the attached Motion for Rule 11 Sanctions twenty-one days after the transmission of this letter. We are providing this notice to give you the required opportunity to voluntarily withdraw the Counterclaim before we seek sanctions.

Very Truly Yours,

Travis G. Jackson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SAN JUAN REGIONAL MEDICAL CENTER,

           Plaintiff/Counter-Defendant,

vs.                                                No. 1:19-cv-00734 KK/JFR

21st CENTURY CENTENNIAL INSURANCE
COMPANY, THE LAW OFFICS OF JAMES LYLE, P.C.,
JUDY LYNN PARKER,

           Defendants.

**MOTION FOR RULE 11 SANCTIONS**

Pursuant to Fed. R. Civ. P. 11, Plaintiff San Juan Regional Medical Center ("SJRMC"), and Third Party Defendant Jackson, Loman, Stanford & Downey, P.C. ("JLSD") respectfully move the Court to sanction The Law Offices of James P. Lyle, P.C. ("JPL Law") or James P. Lyle individually for violations of Rule 11(b).

**Introduction**

This lawsuit began as a minor state court action to collect an unpaid hospital bill. Defendant Parker was injured in an automobile accident, and she was treated at SJRMC. SJRMC filed a hospital lien in the amount of $15,171.62 pursuant to NMSA 1978 §48-8-1 and 2. JPL Law represented Ms. Parker, and Mr. Lyle negotiated a settlement of $50,000.00 with the other driver's insurance carrier. Mr. Lyle accepted full payment from the insurance carrier, disbursed the proceeds of the settlement to his client and himself. But Mr. Lyle never used the proceeds from the settlement to pay for any portion of his client's unpaid hospital bill, thus the lien against Ms. Parker remains in force despite the settlement payment.

On behalf of SJRMC, The Midland Group attempted to negotiate with Mr. Lyle to reach a mutually acceptable reduction of the amounts owed to SJRMC by his client, but the parties

1

could not reach agreement. At an impasse, SJRMC retained a law firm (JLSD) to file an action to collect the unpaid debt owed by Ms. Parker so that a court could decide the proper reduction and ultimate payment owed to SJRMC. Because the amount in controversy was so low, the state court action would have been referred to court-annexed arbitration, and promptly resolved at little cost to the parties. NM R 2 DIST LR2-603(II)(A). The collection action named JPL Law as a party because the law firm received and improperly dispersed the settlement payment.

In retaliation for having his law firm named as a party, Mr. Lyle responded by improperly removing the lawsuit to federal court under sham RICO claims. Naming his law firm as the class representative (not his client, Ms. Parker), Mr. Lyle filed a class class action RICO claim against (1) the hospital (SJRMC); (2) the company that filed the lien against Ms. Parker (The Midland Group); and (3) the law firm retained to commence the collection action in state court on behalf of SJRMC (JLSD). [ECF No. 4]. In the Complaint, Mr. Lyle makes the ridiculous claim that these parties collectively engaged in a criminal conspiracy to commit "systemic extortion" by seeking "demands for lien payments which exceed the amounts" the Lyle Firm contends are allowed under New Mexico's Doctrine of Equitable Subrogation. *Id.* at ¶ 8. In short, Mr. Lyle contends that SJRMC would not agree to sufficiently reduce his client's hospital bill, and that SJRMC's failure to agree to his proposed reduction is indictable "extortion" that harmed his law firm (not his client).

Mr. Lyle quite clearly constructed these bogus claims to misdirect the Court and his client from the fact that his law firm almost certainly mishandled his client's funds. NMRA Rule 15-115 (Safekeeping Property). In blatant violation of Rule 11(b), Mr. Lyle filed these counterclaims and third party claims for an improper purpose, and to harass the parties seeking to collect this debt, to cause unnecessary delay of the resolution of his client's debt, and to

needlessly increase the cost of litigation. Mr. Lyle purposely insured that the legal expense of the litigation will now dwarf the original debt owed by his client. The Court should sanction Mr. Lyle for this misconduct.

There are multiple obvious reasons why the claims asserted by Mr. Lyle are frivolous. First, JPL Law wholly lacks standing to make any claim for any kind of injury based on SJRMC's disagreement over the reduction of Ms. Parker's hospital debt. To the extent a claim could be brought (it can't), Ms. Parker is the real party in interest, not Mr. Lyle's law firm. Second, JPL Law fails to allege an adequate underlying criminal offense indictable under federal or state criminal law. 18 U.S.C. §1961(1). A disagreement over how much a hospital debt should be reduced upon settlement does not constitute a crime, and Mr. Lyle does not even attempt to allege how it could. Finally, Mr. Lyle has no basis in law of fact to allege that JLSD is or could be liable for its representation of SJRMC in the collection dispute. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 1998-NMSC-014, ¶15. New Mexico law is clear that attorneys exclusively owe duties to their own clients, and cannot be held liable for alleged breaches of duties claimed to be owed to opposing parties.

For all of these reasons, the Movants respectfully request that Mr. Lyle and/or JPL Law be sanctioned, and that the Movants be awarded reasonable attorney's fees and costs for having to respond to these baseless claims. As grounds therefore, the Movants state:

**BACKGROUND**

1. SJRMC provided emergency medical services to an injured motorist Judy Lynn Parker. SJRMC, through its agent Midland, filed a hospital lien in the amount of $15,171.62 in the San Juan County Clerk's office and perfected the filing in accordance with NMSA 1978 §48-8-1 and 2.

2. The injured motorist Parker engaged JPL Law to make demand upon the at-fault driver and his insurance company, 21st Century Centennial Insurance Company (21st Century) for damages.

3. 21st Century sent a check for $50,000 to JPL Law making the check payable jointly to JPL Law and Parker.

4. The check for $50,000 sent by 21st Century was in full settlement of Parker's claim for damages and was the full extent of the insurance carried by the at-fault driver that was available for this accident.

5. Despite communications between Midland and JPL Law and later, JLSD and JPL Law, the hospital lien was not paid or resolved.

6. NMSA 1978 §48-8-3 states that any person, firm or corporation, including an insurance carrier, who makes payment to the injured party or her attorney without paying the hospital lien, shall be liable to the hospital for the amount that the hospital was entitled to receive. Liability continues for one year from the date of any payment of money to the injured party or her legal representative.

7. After learning that 21st Century had sent $50,000 to JPL Law and Parker, SJRMC, through its agent Midland and its attorney JLSD, again made demand upon JPL Law for payment of the hospital lien. Agreement on the amount owed to SJRMC could not be reached.

8. SJRMC filed a lawsuit in Second Judicial District Court against 21st Century, Parker and JPL Law requesting payment of the hospital lien in accordance with §48-8-3. JLSD represented SJRMC in this collection action.

9. JPL Law removed the lawsuit to federal court in Cause 1:19-cv-00734 KK/JFR and filed a RICO claim, third-party claims, and a class action claim against SJRMC, and third party defendants Midland and JLSD.

10. The claims filed against SJRMC, Midland and JLSD are not supported by the facts or the law and were interposed for improper purposes such as harassment, delay and to increase the cost of the original lawsuit.

11. JLSD sent a safe harbor Fed. R. Civ. P. 11(c)(2) letter on August 30, 2019 to JPL Law requesting that it withdraw the claim for RICO violations, the third-party claims and the class action claim.

## LEGAL STANDARD

12. Fed. R. Civ. P. 11 requires that an attorney certifies to the best of the person's knowledge, information and belief that the pleading is not being presented for any improper purpose, that the claims are warranted by existing law or by a nonfrivolous legal argument, and that the factual contentions have or will have, upon further investigation, evidentiary support.

13. The attorney must make an inquiry reasonable under the circumstances before he files the pleading. Rule 11(b).

14. Sanctions may be imposed to deter repetition of conduct violating Rule 11 and may include payment of the reasonable attorney's fees directly resulting from the violation. Rule 11(c)(4).

## ARGUMENT

**A.     RICO**

15.     A RICO claim must be predicated upon a pattern of at least two predicate acts of racketeering activity within a ten-year period. 18 U.S.C. §1961(5). A racketeering activity means any act which is indictable under a federal or state criminal statute. 18 U.S.C. §1961(1).

16.     JPL Law alleges that SJRMC, Midland and JLSD engaged in acts of extortion. Counterclaim ¶16.

17.     The counterclaim is completely devoid of any allegations that would support the crime of extortion under New Mexico law, NMSA 1975 §30-16-9, or under federal law, Hobbs Act, 18 U.S.C. 1951(a).

18.     Under either state or federal law, extortion requires the communication of a threat. It is well established that the threat of civil litigation cannot be a threat sufficient to support a criminal extortion charge. *I.S. Joseph Co. v. J. Lauritzen, A/S*, 751 F. 2d 265 (8th Cir. 1984) (When business negotiations broke down and shipowners threatened to sue, threat of litigation was not extortion.)

19.     JPL Law knew at the time it filed the RICO claim that the claims were not warranted by existing law and that the factual contentions did not have evidentiary support. Yet it still filed this baseless claim. The RICO claim was filed for the purpose of harassment, undue delay, or to increase the cost of litigation for SJRMC, which was merely trying to collect its lawfully filed lien. The RICO Claims were filed to obscure JPL Law's mishandling of its client funds.

### B.     Third Party Claims

20.     A third party claim is governed by Fed. R. Civ. P. 14. "A defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

21.     JLSD named as a third party defendant under Fed. R. Civ. P. 14 but the counterclaim/third party complaint fails to allege a single fact to support such a claim. JLSD cannot be held liable to the third party non-client, JPL Law, because it has no duty to protect the interest of a non-client adverse party. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 1988-NMSC-014, ¶15. Nor is it responsible under any theory of law for payment of a hospital lien owed to SJRMC. There are no set of facts that could conceivably be pled that would support a third party claim by JPL Law against the law firm that was representing SJRMC in the collection of its hospital lien. JPL Law filed this third party complaint against JLSD for the purposes of harassment, unnecessary delay, and to increase the cost of ligation.

### Class Action Claim

22.     JPL Law also filed a purported class action claim on behalf of itself and a putative class of similarly situated persons defined as "all individuals or entities that were coerced by the Enterprise into making lien reimbursement payments in the State of New Mexico which did not include appropriate reductions required under the New Mexico Equitable Subrogation Doctrine." Counterclaim, ¶21. JPL Law has no standing to bring an action, class action or otherwise, on behalf of the patients who were treated at SJRMC for injuries they suffered in a motor vehicle accident and whose medical bills became the subject of a filed hospital lien. JPL Law was not injured in a motor vehicle accident and did not receive emergency medical treatment at SJRMC. No lien was filed against JPL Law. JPL Law was not "coerced" into making a lien

reimbursement. As a result, JPL Law cannot be the class representative of individuals or entities who have paid some hospital liens because it has no standing to bring such a class action lawsuit.

23. JPL Law knew, at the time of the filing of the class action complaint against SJRMC and JLSD, that its claim was not warranted by existing law because it did not have and never could have standing to bring such a claim. JPL Law brought this purported class action claim solely for the purposes of harassment, unnecessary delay, and to increase the cost of ligation.

24. Rule 11 sanctions are appropriate in this case because the claims brought by JPL Law against SJRMC and JLSD were not warranted by existing law or by a nonfrivolous legal argument that could possibly establish liability. The factual allegations on which the claims are based have no evidentiary support and even after a reasonable opportunity for further investigation or discovery will have no evidentiary support. The claims were presented to this court solely for an improper purpose, which is expressly prohibited by Fed. R. Civ. P. 11(b).

WHEREFORE, SJRMC and JLSD respectfully request the court to exercise its discretion pursuant to Fed.R. Civ. P. 11(c)(1) to impose sanctions in the form of awarding these parties their total costs and expenses, including attorneys' fees, incurred in to defend against the baseless claims continued in the Counterclaim, Third-Party Complaint and Class Action claim.

Respectfully submitted this 29th day of August, 2019.

JACKSON LOMAN STANFORD & DOWNEY, P.C.

By: /s/ Travis G. Jackson
Travis G. Jackson
Barbara Koenig
Attorneys for San Juan Regional Medical Center and
Jackson Loman Stanford & Downey, P.C.
P.O. Box 1607
Albuquerque, NM 87103-1607
Telephone: (505) 767-0577
travis@jacksonlomanlaw.com

8

Barbara@jacksonlomanlaw.com

I hereby certify that a true copy of the foregoing pleading was served upon all counsel of record via CM/ECF filing of this pleading with the United States District Court For the District Of New Mexico this _____ day of September, 2019.

JACKSON LOMAN STANFORD & DOWNEY, P.C.

By: /s/Travis G. Jackson
      Travis G. Jackson