## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAN JUAN REGIONAL MEDICAL CENTER,

      Plaintiff/Counter-Defendant,

v.                                         No. 19-CV-734 MV/JFR

21st CENTURY CENTENNIAL INSURANCE
COMPANY, THE LAW OFFICES OF JAMES P. LYLE,
P.C., JUDY LYNN PARKER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Rule 12(b)(6) Motion to Dismiss

Counterclaim, Third-Party Claim and Class Action Complaint ("Motion to Dismiss") [Doc. 10]

and Motion for Rule 11 Sanctions ("Motion for Sanctions") [Doc. 20].   The Court, having

considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that

the Motion to Dismiss and the Motion for Sanctions are well-taken and will be granted.

## BACKGROUND

On July 29, 2019, San Juan Regional Medical Center ("SJRMC") commenced the instant

action by filing its Complaint for Payment of Hospital Lien ("SJRMC Complaint") in New

Mexico state court, naming 21st Century Centennial Insurance Company ("21st Century

Insurance"), the Law Offices of James P. Lyle, P.C. ("Lyle"), and Judy Lynn Parker as

defendants.   Doc. 2-1.   The allegations in the SJRMC Complaint are as follows.   Parker was

injured in an automobile accident and received medical treatment and hospital services at

SJRMC for her injuries.   *Id.* ¶¶ 8, 11, 12.   Parker's injuries were caused by an individual

named Richard Jensen, who was insured by 21st Century Insurance.   *Id.* ¶ 18.   Parker retained

1

Lyle to make a claim on her behalf against 21st Century Insurance for damages she suffered as a result of the accident.   *Id.* ¶¶ 8-10.

SJRMC charged Parker $15,171.62 for her care.   *Id.* ¶ 14.   On February 12, 2018, SJRMC filed a Notice of Hospital Lien (the "Lien") in the amount of $15,171.62 and mailed a copy of the Lien to 21st Century Insurance, Jensen, and Lyle.   *Id.* ¶¶ 15-17, 19.   During the month of June 2018, SJRMC, through its agent the Midland Group, and Lyle communicated regarding the payment of the Lien, but were unable to come to a resolution.   *Id.* ¶¶ 20-21.

On August 1, 2018, 21st Century Insurance issued a check in the amount of $50,000, made payable to Lyle and Parker, in full settlement of Parker's claim against 21st Century Insurance, and the next day, mailed the check to Lyle.   *Id.* ¶¶ 22-24.   Lyle then disbursed "the majority of the funds" to Parker.   *Id.* ¶ 39.   Specifically, Parker received the proceeds of the $50,000 check "minus the amount allocated to attorneys' fees, court costs and other expenses necessary in obtaining the settlement or compromise."   *Id.* ¶ 43.

SJRMC made demands upon 21st Century Insurance, Parker, and Lyle to pay the Lien. *Id.* ¶¶ 31, 37, 46.   To date, neither 21st Century Insurance, Parker, nor Lyle has tendered payment to SJRMC for the Lien, and accordingly, the Lien remains unpaid.   *Id.* ¶¶ 25-28.   As a result, the SJRMC Complaint seeks, *inter alia*, the entry of judgment against 21st Century Insurance, Lyle, and Parker "for the amount of the [] Lien that [SJRMC] is entitled to receive by law."   *Id.* at 6.   Attached to the SJRMC Complaint is a Court-Annexed Arbitration Certificate, which states that SJRMC seeks only a money judgment and that the amount sought does not exceed $25,000.   Doc. 2-1.

Lyle, on its own behalf, removed the instant action to this Court on August 12, 2019, asserting that "[t]he Counterclaim and Third Party Complaint being filed concurrently herewith .

. . asserts claims arising under federal law."   Doc. 1 ¶ 2.   That same day, Lyle filed its Answer, Counterclaim, Third Party Complaint, and Class Action Complaint by Law Offices of James P. Lyle, P.C. ("Lyle Complaint").   Doc. 3.   Lyle, on behalf of itself and "all others similarly situated," names as Counter-Defendant SJRMC, and as Third-Party Defendants The Midland Group ("Midland"), SJRMC's billing agent, and Jackson, Loman, Stanford & Downey, P.C. ("JLSD"), the law firm retained by SJRMC in connection with collection on the Lien.   *Id.*

The Lyle Complaint alleges one count against SJRMC, Midland, and JLSD (collectively referred to as "Movants"), which the Lyle Complaint denotes as the "Enterprise," for violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961.   In support of its RICO claim, Lyle alleges that the Enterprise has "engaged in a widespread practice of illegal activity" consisting of "systemic extortion of excessive reimbursements from payments made on behalf of third-party wrongdoers."   *Id.* ¶ 8.   "Specifically," Lyle alleges, "the Enterprise routinely causes demands for lien payments which exceed the amounts that can be validly claimed under New Mexico law because, on information and belief, the Enterprise does not honor New Mexico's Doctrine of Equitable Subrogation."   *Id.*   With regard to the instant case, Lyle alleges that: "the damages suffered by [Parker] could conservatively be calculated at [$180,000]"; that, if Parker paid the full amount of the Lien from the insurance proceeds, "less the amount paid for attorneys' fees, court costs or other expenses necessary in obtaining the settlement or compromise," "the Enterprise would receive approximately $10,164.98, or approximately 20% of the total settlement"; and that, "[s]ubtracting this amount, and the amount [she] has paid in attorney's fees, costs and gross receipt taxes, []Parker "would be left with $23,548.02, or 13% of the estimated total value of her claim," in comparison with the "67% of its claimed lien" that the Enterprise would receive.   *Id.* ¶¶ 9-11.   As a result, Lyle concludes,

"the Enterprise has attempted, and is attempting, to extort money to which it is not legally entitled." *Id.* ¶ 13.   Asserting that Lyle, "and all others similarly situated, have suffered financial loss as a result of the Enterprise's pattern of racketeering activity," Lyle "brings this action on behalf of itself and a putative class of "all individuals or entities who were coerced by the Enterprise into making lien reimbursement payments in the State of New Mexico which did not include appropriate reductions required under the New Mexico Equitable Subrogation Doctrine." *Id.* ¶ 21.

On their Motion to Dismiss, Movants ask the Court to dismiss the Lyle Complaint for failure to state a claim, and to sanction Lyle pursuant to 28 U.S.C. § 1927 for proceeding with what they characterize as a frivolous RICO claim.   Doc. 10.   For much the same reasons, on their Motion for Sanctions, Movants ask the Court to sanction Lyle pursuant to Rule 11 of the Federal Rules of Civil Procedure.   Doc. 20.   In response, Lyle argues that the Court should convert the Motion to Dismiss into a motion for summary judgment, defer ruling on it until after Lyle conducts discovery, and deny the requests for sanctions. Docs. 16, 26.

## DISCUSSION

I.   <u>Motion to Dismiss</u>

A.   <u>Legal Standard</u>

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable

4

inferences in the plaintiff's favor.   *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss.   *Id.*   First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.*   Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.   "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."   *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible").   Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."   *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth.   When there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they plausibly give rise
to an entitlement to relief."

*Id.* at 679.

      B.    <u>The Instant Case</u>

On their Motion to Dismiss, Movants argue as follows:   that Lyle fails as a matter of law

to allege the essential elements of a RICO claim; that JLSD, as the law firm representing

SJRMC, is immune from liability as a matter of law; and that Lyle's Third Party Complaint

against Midland and JLSD is improper as a matter of law.   Doc. 10.   In response, Lyle argues

that the Motion to Dismiss "is premature," as it "requires consideration of matters outside of the

pleadings and requires additional discovery before a full and complete response can be

prepared."   Doc. 16 at 5.   In support of this argument, Lyle invokes Rule 12(d) of the Federal

Rules of Civil Procedure, which provides that, "[i]f, on a motion under Rule 12(b)(6) [], matters

outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56.   All parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

According to Lyle, because Movants "have submitted over twenty (20) pages of documents

outside of the pleadings," Rule 12(d) requires the Court to convert the Motion to Dismiss into a

motion for summary judgment.   Doc. 16 at 6.   Further, invoking Rule 56(d) of the Federal

Rules of Civil Procedure, Lyle argues that because his affidavit demonstrates that he needs

further discovery in order to "fully and completely respond," the Court should defer

consideration of the Motion to Dismiss.   *Id.*; *see* Fed. R. Civ. P. 56(d) (stating that if a

nonmovant shows by affidavit that "it cannot present facts essential to justify its opposition, the

court may . . . defer considering the motion or deny it").

6

Movants, however, neither refer to nor rely upon documents outside of the pleadings in connection with their request for dismissal pursuant to Rule 12(b)(6).   While Movants did submit documents along with their motion, those documents are relevant to and cited only in support of their request for § 1927 sanctions.   Movants' arguments in support of their Motion to Dismiss depend solely on the insufficiency of the allegations within the four corners of the Lyle Complaint.   Further, in determining whether the Lyle Complaint states a claim upon which relief can be granted, the Court need not, and does not, consider any documents outside of the Lyle Complaint.   Accordingly, there is no basis to convert the Motion to Dismiss into a motion for summary judgment pursuant to Rule 12(d).   Similarly, there is no reason to defer consideration of the Motion to Dismiss pursuant to Rule 56(d), as no amount of discovery would provide refuge from dismissal if, as Movants argue, the allegations within the four corners of the Lyle Complaint are insufficient.   Accordingly, Lyle's request for additional time to respond to the Motion to Dismiss is denied, and the Court will consider the merits of the Motion to Dismiss.

Movants' primary argument is that the Lyle Complaint fails to state a RICO claim.   "To state a RICO claim, a plaintiff must allege that the defendant violated the substantive RICO statute, 18 U.S.C. § 1962, by setting forth four elements:   (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."   *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256-57 (10th Cir. 2003) (citation omitted).   "A pattern of racketeering activity must include commission of at least two predicate acts."   *Id.* at 1257.   Further, "a plaintiff has standing to bring a RICO claim only if he [or she] was injured in his [or her] business or property by reason of the defendant's violation of § 1962."   *Id.*

Lyle alleges as predicate acts that Movants engaged in "extortion" by "communicat[ing] and transmit[ing] threats with an intent to wrongfully obtain lien reimbursements far in excess of

what [they are] legally entitled to recover under New Mexico law."   Doc. 3 ¶ 16.   The only

"threats" that Movants allegedly communicated and transmitted, however, were threats of

commencing litigation to recover on the Lien.    Even if, as Lyle alleges, Movants are not legally

entitled to recover the full amount of the Lien, its allegations that Movants threatened to

commence a lawsuit to recover that amount are allegations of "no more than abusive litigation,"

and as such do not constitute extortion.    *Deck*, 349 F.3d at 1257.

"Extortion" is defined in Section 1951(b)(2) as "the obtaining of property from another,

with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or

under color of official right."   In *Deck*, the Tenth Circuit "join[ed] a multitude of other courts"

in specifically holding that "meritless litigation is not extortion under § 1951."    349 F.3d at

1258.   The Tenth Circuit explained that "[e]xtortion is the antithesis of litigation as a means of

resolving disputes," that, in order "[t]o promote social stability," it "encourage[s] resort to the

courts rather than resort to force and violence," and that "recognizing abusive litigation as a form

of extortion would subject almost any unsuccessful lawsuit to a colorable extortion (and often a

RICO claim.)"   *Id.*   Because "the adjective 'wrongful' in the extortion statute was not intended

to apply to litigation," the Court held that "allegations of bad-faith litigation do not state the

predicate act of extortion."   *Id.*

This holding is squarely on point here.   Movants made demands upon, *inter alia*, Lyle to

pay the Lien, and when no payment was tendered, commenced the instant action for entry of

judgment "for the amount of the [] Lien that [SJRMC] is entitled to receive by law."   Doc. 2-1

at 6.   Lyle alleges that, by these actions, Movants engaged in "systemic extortion," because

Movants are not entitled under New Mexico law to recover the entire amount of the Lien.   Doc.

3 ¶ 8.   Under *Deck*, however, these "allegations of bad-faith litigation do not state the predicate

act of extortion."    349 F.3d at 1258.    The Lyle Complaint thus fails to allege, as it must, any

RICO predicate acts.

Indeed, even if the Lyle Complaint did allege at least two predicate acts, it would be

subject to dismissal for failure to allege the requisite injury.    A plaintiff has standing to assert a

RICO claim only if the RICO violation "proximately caused" injury to his or her business or

property.    *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).    Here, the factual allegations of

the Lyle Complaint belie its conclusory and vague allegation that Lyle "suffered financial loss as

a result of the Enterprise's pattern of racketeering activity."    Doc. 3 ¶ 17.

Specifically, Lyle alleges that Movants "insisted" that Parker and Lyle "reimburse it for

the entire amount" of the Lien "*less the amount paid for attorneys' fees*, court costs or other

expenses necessary in obtaining the settlement or compromise."    Doc. 3 ¶ 10 (emphasis added).

Similarly, Lyle alleges that "Parker would be left with only 13% of the estimated value of her

claim" after subtracting, *inter alia*, "*the amount that [] Parker has paid in attorneys' fees*, costs

and gross receipt taxes."    *Id.* ¶ 11 (emphasis added).    By its own allegations, Lyle, as Parker's

attorney, would first be reimbursed for its fees, and thus would suffer no injury whatsoever, as a

result of Movants' allegedly extortionate demands for payment on the Lien.    Because Lyle

would recover its fees regardless of the ultimate amount paid on the Lien, the entirety of the

injury resulting from Movants' alleged impropriety belongs to Parker and Parker alone.    The

Lyle Complaint thus fails to allege that Lyle was injured in its business or property by reason of

Movants' alleged RICO violation.    It follows that Lyle does not have standing to pursue a

RICO claim against Movants, on behalf of himself or anyone else, in connection with their

pursuit of payment on the Lien.

The Lyle Complaint thus fails to allege any predicate acts and fails to allege any injury to

Lyle.   Each of these failures alone warrants dismissal of the Lyle Complaint pursuant to Rule 12(b)(6) for failure to state a RICO claim.   The Court thus need not reach Movants' additional arguments in support of their Motion to Dismiss.

II.      Requests for Sanctions

        In their Motion to Dismiss, Movants request that the Court sanction Lyle under § 1927 for "filing [] this sham class action RICO claim," because it "has caused [] Movants to incur needless expense caused by actions taken in bad faith, vexatiously, wantonly, and for oppressive reasons."   Doc. 10 at 27.   Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   28 U.S.C. § 1927.   The Tenth Circuit has held, however, that § 1927 "applies to the multiplication of proceedings and not to the initiation of proceedings."   *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006).   Thus, while an attorney may be sanctioned under § 1927 for "recklessly multiplying proceedings by opposing a motion to dismiss a patently meritless claim," he or she may not be sanctioned under § 1927 for filing a frivolous claim in the first instance.   *Bixler v. Foster*, 403 F. App'x 325, 327 (10th Cir. 2010).   This is in keeping with the purpose of the statute, which "exist[s] to provide an 'incentive for attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims.'"   *Id.* at 328 (quoting *Steinert*, 440 F.3d at 1224).

        Here, Movants do not argue that Lyle should be sanctioned for opposing their Motion to Dismiss, but rather for "asserting baseless new counterclaims and third-party claims against new parties" in the first instance.   Doc. 10 at 27.   The Court is foreclosed from imposing § 1927 sanctions for Lyle's assertion of such claims.   Accordingly, the Court denies Movants' request

for sanctions under § 1927.

In their Motion for Sanctions, Movants ask the Court to impose Rule 11 sanctions on Lyle for filing his "counterclaims and third party claims for an improper purpose, and to harass the parties seeking to collect [on the Lien], to cause unnecessary delay of the resolution of his client's debt, and to needlessly increase the cost of litigation." Doc. 20 at 2-3.    According to Movants, Lyle "purposely insured that the legal expense of the litigation will now dwarf the original debt owed by his client," and accordingly, should be sanctioned for his misconduct.   *Id.* at 3.

Rule 11 cautions attorneys that, by "presenting to the court a pleading, written motion, or other paper," they certify to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the paper meets the following conditions:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (quoting Fed. R. Civ. P. 11(b)).   "In short, Rule 11 requires that a 'pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and . . . not interposed for any improper purpose.'" *Predator*, 793 F.3d at 1182 (quoting *Coffey v. Healthtrust, Inc.,* 1 F.3d 1101, 1104

(10th Cir.1993)).   "In deciding whether to impose Rule 11 sanctions, a district court must apply

an objective standard; it must determine whether a reasonable and competent attorney would

believe in the merit of an argument."   *Dodd Ins. Serv., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d

1152, 1155 (10th Cir. 1991).   "If, after notice and a reasonable opportunity to respond, the court

determines that Rule 11(b) has been violated, the court may impose an appropriate sanction."

Fed. R. Civ. P. 11(c)(1).   An "appropriate sanction" is one "limited to what suffices to deter

repetition of the conduct or comparable conduct by others similarly situated."   *Predator*, 793

F.3d at 1182 (quoting Fed. R. Civ. P. 11(c)(4)).   In particular, "if imposed on motion and

warranted for effective deterrence," the court may enter an order directing that the attorney who

presented the pleading pay to the movant all or part of the reasonable attorney's fees and other

expenses directly resulting from the violation."[1]   Fed. R. Civ. P. 11(c)(4).

       In support of their request for Rule 11 sanctions, Movants first argue that Lyle "knew at

the time that it filed its RICO claim that the claim was not warranted by existing law and that the

factual contentions did not have evidentiary support."   Doc. 20 ¶ 19.   According to Movants,

the RICO claim "was filed for the purpose of harassment, undue delay, or to increase the cost of

litigation for SJRMC, which was merely trying to collect its lawfully filed lien," and "to obscure

[Lyle's] mishandling of its client funds."   *Id*.   Next, Movants argue that Lyle named JLSD as a

third-party defendant solely "for the purposes of harassment, unnecessary delay, and to increase

---

[1] Rule 11 contains a "safe harbor" provision, which provides that a motion for sanctions must be served, "but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."   Fed. R. Civ. P. Rule 11(c)(2).   Movants represent, and Lyle does not dispute, that Movants complied with the safe harbor provision of Rule 11(c)(2) by serving their Motion for Sanctions on Lyle before filing it.   Doc. 20 ¶ 11. Lyle did not withdraw his class action RICO claim or move to dismiss it within 21 days after service of the motion.

the cost of litigation," knowing that JLSD could not "be held liable to the third-party non-client, [Lyle], because it has no duty to protect the interest of a non-client adverse party."   *Id.* ¶ 21. Finally, Movants argue that Lyle "knew, at the time of the filing of this class action complaint against SJRMC and JLSD, that its claim was not warranted by existing law because it did not have and never could have standing to bring such a claim," and brought "this purported class action claim solely for the purposes of harassment, unnecessary delay, and to increase the cost of litigation."   *Id.* ¶ 24.   While not directly addressing all of Movants' specific arguments, Lyle disagrees that it engaged in sanctionable conduct, insisting that it properly filed its class action RICO claim and that it is Movants, instead, whose predatory conduct is sanctionable.   Doc. 26.

As discussed above, the Lyle Complaint fails to state a RICO claim because it alleges no conduct that constitutes a predicate act (let alone two predicate acts) for purposes of a RICO claim.   As Movants argue, a brief review of controlling Tenth Circuit law would have revealed that the threat of allegedly abusive litigation does not constitute extortion, and thus cannot serve as a predicate act for purposes of RICO.   Also as Movants, argue, because Lyle admittedly suffered no injury as a result of what it deems "extortionate" conduct by Movants, it should have realized not only that it did not have standing to bring a claim against Movants for pursuing payment on the Lien, but also that it could not bring such a claim on behalf of others who were affected by Movants' pursuit of payment on the lien; in short, Lyle is not "similarly situated" to anyone who has been injured by Movants' allegedly improper conduct.   Further, although in deciding the Motion to Dismiss the Court did not reach the issue of whether it was improper to name JLSD as a third-party defendant, that issue is relevant to the instant Rule 11 determination. Lyle has provided no authority contradicting that provided by Movants, which makes clear that JLSD would have no duty to Lyle, and thus could not be properly named as a third-party

defendant in the Lyle Complaint.

For these reasons, the Court finds that a reasonable and competent attorney would not have believed in the merit of Lyle's class action Rico claim.   By filing the Lyle Complaint and the response in opposition to the Motion to Dismiss, Lyle has violated the requirements of Rule 11 that, to the best of its knowledge, the "claims, defenses, and other legal contentions" set forth therein "are warranted by existing law" and not "presented for any improper purpose."   Fed. R. Civ. P. 11(b).   The Court finds that the sanctions requested by Movants, namely, an award to Movants of their reasonable attorney's fees, costs, and expenses in defending against the claims in the Lyle Complaint, are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," and thus are appropriate.   *Predator*, 793 F.3d at 1182; *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("[N]othing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after [] dismissal. . . It is well established that a federal court may consider collateral issues after an action is no longer pending, including an award of attorney's fees").

The Court directs Movants to file a motion for attorney's fees, costs and expenses, including supporting affidavits and documentation, within ten (10) days of entry of this Memorandum Opinion.   Lyle's objections, if any, to the reasonableness of Movants' requests must be filed within fourteen (14) days thereafter.

## CONCLUSION

For the foregoing reasons, Movants are entitled to dismissal of the Lyle Complaint, and to an award of attorney's fees pursuant to Rule 11(b) as a result of Lyle's conduct in filing and continuing to pursue the Lyle Complaint.

14

**IT IS THEREFORE ORDERED** that Rule 12(b)(6) Motion to Dismiss Counterclaim, Third-Party Claim and Class Action Complaint ("Motion to Dismiss") [Doc. 10] and Motion for Rule 11 Sanctions ("Motion for Sanctions") [Doc. 20] are **GRANTED**, as follows:

(1)     Answer, Counterclaim, Third Party Complaint, and Class Action Complaint by Law Offices of James P. Lyle, P.C. is **dismissed with prejudice** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

(2)     The remainder of this action is remanded to the Second Judicial District Court of the State of New Mexico, Bernalillo County;

(3)     The Clerk of this Court is directed to remand the remainder of this action to the Second Judicial District Court of the State of New Mexico, Bernalillo County; and

(4)     Reasonable attorney's fees and costs will be awarded to Movants as described herein, in an amount to be determined by the Court following submission of the required documentation by Movants and after consideration of any timely-filed objections by Lyle, as follows:   Movants shall file a motion for attorney's fees, costs and expenses, including supporting affidavits and documentation, within ten (10) days of entry of this Memorandum Opinion and Lyle's objections, if any, to the reasonableness of Movants' requests must be filed within fourteen (14) days thereafter.

DATED this 20th day of October 2020.

_____
MARTHA VAZQUEZ
United States District Judge

15